**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **JOHNNY STOKLEY, JR,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:14-CV-3657-M |
| § | |
| **HOME SERVICING, LLC,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for pretrial management. Before the Court for recommendation is *Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*, filed October 24, 2014 (doc. 8). Based on the relevant filings and applicable law, the motion should be **GRANTED in part and DENIED in part**.

**I.   BACKGROUND**

This case involves the attempted foreclosure of the property located at 2543 E. Ann Arbor Avenue, Dallas, Texas 75216 (the Property). On October 7, 2014, Johnny Stokley, Jr. (Plaintiff) filed this *pro se* action in state court against Home Servicing, LLC (Defendant). (*See* doc. 1-1 at 5.)[1] On October 7, 2014, the state court issued a temporary restraining order preventing Defendant from foreclosing on the Property. (doc. 1-3 at 29.)

Plaintiff contends that the "transaction between [him] and defendant" is a "federally related mortgage loan" as defined in RESPA, 12 U.S.C. § 2602(1). (doc. 1-1 at 6.) He claims that Defendant is subject to guidelines adopted under the Making Home Affordable programs regarding

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

whether a lender should or must offer a way to cure a default as well as "other proprietary internal programs subject to the Plaintiff's own policies and procedures." (*Id*.) According to Plaintiff, he is entitled to a modification under the Home Affordable Modification Program (HAMP). (*Id*.)

Plaintiff is behind on his mortgage payments. (*Id*.) He claims that he applied for a loan modification, and Defendant accepted his modification paperwork. (*Id*.) Defendant requested that the mortgage investor delay a foreclosure set for October 7, 2014, pending approval of the modification, but the investor did not "pull the property from the ... foreclosure." (*Id*.) Additionally, Defendant failed to respond to a "dispute regarding the mortgage arrears and fees" under the Fair Debt Collection Practices Act (the FDCPA) and the Real Estate Settlement and Procedures Act (RESPA). (*Id*.) Plaintiff contends that Defendant also failed to provide an accounting of the mortgage loan and "notice all the owners of the property." (*Id*. at 7-8.) Defendant's failure to provide an accounting of the debt or "pull the property from foreclosure" pending review of the modification leaves him without adequate recourse "to the foreclosure." (*Id*. at 7.) He asserts claims for violations of the FDCPA, RESPA, and HAMP as well as a failure to provide an accounting. He seeks injunctive relief enjoining Defendant from posting the Property for foreclosure or taking any actions to foreclose on it, declaratory relief, and an accounting of all charges and amounts due on the loan, "including proof of ownership of the mortgage note." (*Id*. at 7, 8, 11.)

On October 10, 2014, Defendant removed the action to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331 (doc. 1 at 2.) It filed an amended notice of removal on October 24, 2014, asserting both federal question jurisdiction and diversity jurisdiction. (doc. 7-8.) On October 24, 2014, it also filed a motion to dismiss Plaintiff's petition for failure to state a claim against it. (doc. 8.) Plaintiff failed to file a response.

2

## II.   RULE 12(b)(6) MOTION

Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 8.)

**A.**      **Legal Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted).

Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must

"raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

**B.     FDCPA**

Defendant argues that Plaintiff's FDCPA claim should be dismissed because he fails to allege that it is a "debt collector" as defined by the Act.[2] (doc. 9 at 3.)

The FDCPA "is designed 'to eliminate abusive debt collection practices by debt collectors.'" *Watson v. Aurora Loan Services LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at *7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)). It "prohibits a 'debt collector' from: 1) using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as 2) using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (citing 15 U.S.C. §§ 1692e

---

[2]Defendant also argues that Plaintiff's claim should fail because he does not allege that he is a consumer under the Act. (doc. 9 at 4.) Because Plaintiff's FDCPA claim is otherwise subject to dismissal, it is unnecessary to reach this argument.

and 1692f).

Under the Act, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Garcia*, 2012 WL 3847362, at *6 (citing *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008)). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Id.* (citing *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007)). Notably, the Act exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt *which was originated by such person.*" 15 U.S.C. § 1692g(a)(6)(F) (emphasis added). Pursuant to this exception, courts have concluded that "[t]he term 'debt collector' does not include lenders[,] . . . the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)).

Plaintiff alleges that Defendant failed to respond to a dispute regarding his mortgage arrears and fees under the FDCPA. (doc. 1-1 at 6-8.) His conclusory allegations fail to show that Defendant was either engaged "in any business the principal purpose of which [was] the collection

5

of any debts" or that it "regularly collected or attempted to collect ... debts." *See* 15 U.S.C. § 1692a(6). Additionally, to the extent there was an assignment of Plaintiff's loan to the "mortgage investor" that he references in his petition, he does not assert, and nothing in the pleadings indicates, that the debt was in default at the time of the assignment. *See Gipson*, 2013 WL 3746003, at *2. Without more, these allegations fail to meet the *Iqbal* pleading standards, and Plaintiff's FDCPA claim should be dismissed. *See Garcia*, 2012 WL 3847362, at *6–7 (dismissing FDCPA claims after finding that the plaintiffs' recitation of the statutory language, without any facts in support, was insufficient to plausibly allege that the defendants were "debt collectors" under the Act); *see also Iqbal*, 556 U.S. at 678 (to state a claim, a plaintiff must plead sufficient facts to make the claim "plausible on its face"); *Guidry*, 954 F.2d at 281 (well-pleaded facts are needed to avoid dismissal). Defendant's motion to dismiss this claim should be granted.

**C.     RESPA Claims**

Defendant seeks to dismiss Plaintiff's claims for violation of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41[3] on grounds that he fails to allege that he suffered actual damages as a result of Defendant's alleged violations, or to allege facts that suggest Defendant engaged in a pattern or practice of compliance such that he would be entitled to statutory damages. (doc. 9 at 4-5.)

RESPA protects borrowers, in part, by prohibiting predatory practices in the lending and servicing of federally-related mortgage loans. *See* 12 U.S.C. §§ 2601(a), 2605–2608; *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *3 (N.D. Tex. May 19, 2011). Section 6 of RESPA imposes two notice requirements in connection with all

---

[3] Defendant also argues that Plaintiff fails to allege a basis for delaying foreclosure pursuant to 12 C.F.R. § 1024.41(f), (g), (h). Because Plaintiff's claim under 12 C.F.R. § 1024.41 is otherwise subject to dismissal, it is unnecessary to reach this argument.

6

"federally related" mortgage loans: (1) at the time of the credit application, a lender must disclose to the borrower that the loan servicing may be "assigned, sold, or transferred to any other person at any time while the loan is outstanding"; and (2) a "transferor" and a "transferee" mortgage servicer must notify the borrower "of any assignment, sale or transfer of the servicing of the loan." 12 U.S.C. § 2605(a)-(c).

Additionally, if a loan servicer receives a qualified written request (QWR)[4] from the borrower for information about the loan, the servicer must acknowledge the receipt of the QWR within 20 days, unless it takes other action requested by the borrower within that time-frame. 12 U.S.C. §§ 2605(e)(1)–(2); 24 C.F.R. § 3500.21(e). In addition, the servicer must take corrective action within 60 days of receiving the QWR, including crediting any late charges or penalties or conducting an investigation and providing the borrower with a written explanation of the reasons for the action and the name and telephone number of an employee of the servicer to whom the borrower can direct any further inquiry on the matter. 12 U.S.C. § 2605(e)(1)(B). To recover against a lender or mortgage servicer for a violation of § 2605, the borrower must allege actual damages resulting from the violation. *Id.* § 2605(f)(1)(A); *Hurd v. BAC Home Loans Servicing*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012). Alternatively, a court may award up to $2,000 in statutory damages if the defendant engaged in "a pattern or practice of noncompliance." *See* 12 U.S.C. § 2605(f)(1)(B); *Herrera v. Wells Fargo Bank, N.A.*, No. H-13-68, 2013 WL 961511, at *11

---

[4] A QWR is:
A written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, . . . that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] . . . includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
12 U.S.C. § 2605(e)(1)(B). The QWR must relate to the "servicing" of the loan, which is defined as "receiving any scheduled periodic payments from a borrower" and "making the payments of principal and interest ... received from the borrower as may be required pursuant to the terms of the loan." *Id.* §§ 2605(i)(3), 2605(e)(1)(A).

7

(N.D.Tex. Mar. 12, 2013).

In the Dodd-Frank Wall Street and Consumer Protection Act of 2011 (the Dodd-Frank Act), Congress amended RESPA to provide greater protection for borrowers who have fallen behind on their mortgage payments. *See* Dodd-Frank, Pub. L. No. 111-206, 124 Stat. 1375, § 1463 (2010). The Consumer Financial Protection Bureau (CFPB) promulgated new rules pertaining to mortgage servicing, including amendments to Regulation X, to carry out the Dodd-Frank Act mandates.[5] *See* Consumer Financial Protection Bureau, Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696 (Feb 14, 2013) (codified in 12 C.F.R. pt. 1024).[6] These new rules are codified in 12 C.F.R. pt. 1024. Subsections (c), (f), and (g) prohibit a servicer from moving forward with foreclosure while simultaneously working with the borrower to avoid foreclosure.[7] A borrower may enforce the provisions of § 1024.41 pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)), which as noted above, includes a private right of action for damages. 12 C.F.R. § 1024.41(a).

Plaintiff alleges that the transaction between him and Defendant is a "federally related mortgage loan" as that term is defined in RESPA, 12 U.S.C. § 2602(1). (doc. 1-1 at 6.) He contends

---

[5]The Dodd-Frank Act transferred to the CFPB all of the "consumer financial protection functions" that were previously carried out by other regulatory agencies. *See* Pub. L. 111-203, §§ 1061, 1098.

[6] These new rules amending Regulation X, codified in 12 C.F.R. pt. 1024, became effective as of January 10, 2014.

[7]Subsection (c) provides that if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, within 30 days of receiving the application, a servicer must evaluate the borrower for all loss mitigation options available to the borrower and provide the borrower with a notice stating, among other things, its determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. 12 C.F.R. § 1024.41(c). Subsection (f)(2) states that if a borrower submits a complete loss modification application during the pre-foreclosure review period or before a servicer has made the first notice or filing required by law for any foreclosure process, the servicer shall not make that notice or filing unless certain conditions are met. 12 C.F.R. § 1024.41(f)(2). Subsection (g) states that if a borrower submits a complete loss modification application after a servicer has made the first notice or filing required by law for any foreclosure process, the servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale. 12 C.F.R. § 1024.41(g).

8

that Defendant failed to give notice to all owners of the property and failed to respond to a "dispute regarding mortgage arrears and fees" under RESPA. (*Id*. at 6-8.) He also contends that he has applied for a modification of his loan, and Defendant accepted his modification paperwork. (*Id*. at 6.) He asserts that the investor on his loan has not "pulled the property" from the scheduled foreclosure even though Defendant requested that it delay foreclosure pending approval of the loan modification. (*Id*.) He argues that as a result, he is left "without adequate recourse to the foreclosure." (*Id*. at 7.) His allegation that Defendant failed to give notice to all the owners of the Property is liberally construed as asserting a violation of RESPA's notice requirements, and his allegation regarding Defendant's failure to respond to his "dispute" is liberally construed as asserting a violation of RESPA's requirement that a servicer respond to a QWR. Additionally, his allegations regarding Defendant and the investor's failure to postpone the foreclosure pending review of his modification are liberally construed as asserting a claim under 12 C.F.R. §§ 1024.41(c), (f), and (g).

Plaintiff has not alleged any facts giving rise to a reasonable inference that he suffered actual damages from Defendant's purported failure to respond to his "dispute." Neither does he state that Defendant engaged in a "pattern or practice of noncompliance," thereby subjecting it to statutory damages under § 2605(f)(1)(B). In fact, Plaintiff does not request any monetary damages, but only seeks declaratory relief, injunctive relief, and an accounting of "all charges and amounts due." (doc. 1-1 at 7-11.) Plaintiff's RESPA claims should therefore be dismissed. *See Gipson v. Deutsche Bank Nat. Trust Co.*, No. 3:13-cv-4820, 2015 WL 2069583, at *24 (N. D. Tex. May 4, 2015)(dismissing claim under § 2605(e) where the plaintiff failed to plead facts showing that he suffered actual damages that were caused by the defendant's failure to respond as required under § 2605(f)(1)(A)

or plead a pattern of or practice of noncompliance under § 2605(f)(1)(B)); *Herrera*, 2013 WL 961511, at *11 (same); *Hurd*, 880 F. Supp. 2d at 768 (dismissing claim under § 2605(e) where the plaintiff failed to allege actual damages); *Hill v. Wells Fargo Bank, NA*, No. 4:11-CV-644-A, 2011 WL 5869730, at *3 (N.D. Tex. Nov. 17, 2011) (same); *Akintunji v. Chase Home Fin., L.L.C.*, No. H-11-389, 2011 WL 2470709, at *2–3 (S.D. Tex. Jun. 20, 2011) (same).

**D.    HAMP**

To the extent Plaintiff intends to assert a cause of action under HAMP, Defendant moves to dismiss it on the basis that HAMP and related programs do not create a private right of action for borrowers.  (doc. 9 at 5.)

The U.S. Department of the Treasury established HAMP, codified in 12 U.S.C. §§ 5219 and 5219a, under the Emergency Economic Stabilization Act of 2008 (EESA) as part of "its efforts to stabilize the country's housing and financial system." *Strange v. Flagstar Bank, FSB*, No. 3:11-cv-2642-B, 2012 WL 987584, at *2 (N.D. Tex. Mar. 22, 2013)(citing 12 U.S.C. § 5201).  Although HAMP was enacted, in part, to help homeowners avoid foreclosure, courts have held that it does not create a private cause of action for borrowers against lenders and mortgage servicers. *Wildy v. Wells Fargo Bank, N.A.*, No. 3:12-cv-01831-BF, 2013 WL 246860, at *3 (N.D.Tex. Jan. 21, 2013)(holding that "there is no private right of action for borrowers for failure to receive a HAMP modification")(collecting cases); *Cade v. BAC Home Loans Servicing, LP*, No. H-10-4224, 2011 WL 2470733, at *2 (S.D. Tex. June 20, 2011) (explaining that "the majority of courts faced with HAMP questions ... have determined that no private right of action to enforce lender compliance exists under HAMP"); *Akintunji*, 2011 WL 2470709, at *4 ("There is no private cause of action under HAMP.")

Because there is no private right of action for borrowers under HAMP, Defendant's motion to dismiss Plaintiff's claim of entitlement to a modification under HAMP should be granted. *See Cruz v. Citimortgage, Inc.*, No. 3:11-cv-2871-L, 2013 WL 1836095, at *6 (N.D.Tex. May 21, 2012)(dismissing the plaintiffs' claim of entitlement to a permanent loan modification under HAMP because HAMP does not create a private right of action for borrowers against lenders and servicers).

**E.   Accounting**

Defendant seeks to dismiss Plaintiff's claim of entitlement to an accounting and its request for one on the basis that no fiduciary relationship exists between the parties, and because an accounting is an equitable remedy and not an independent cause of action. (doc. 9 at 6.)

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Watson v. Citimortgage, Inc.*, 814 F. Supp.2d 726, 737 (E.D.Tex. 2011) (quoting *Brown v. Cooley Enters., Inc.*, No. 3:11-cv-0124-D, 2011 WL 2200605, at *1 (N.D.Tex. June 7, 2011)). A suit in equity "is proper when the facts and accounts presented are so complex [that] adequate relief may not be obtained at law." *Steele v. Green Tree Servicing, LLC*, No. 3:09-cv-0603-D, 2010 WL 3565415, at *8 (N.D.Tex. Sept. 7, 2010), *aff'd,* 453 F. App'x 473 (5th Cir. 2011)(quoting *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex.App.–Houston [14th Dist.] 2002, pet. denied). "[I]f the party can obtain similar relief through standard discovery, the trial court may decline to order an accounting." *Id*. "If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues." *Watson*, 814 F. Supp.2d at 737 (citing *Shields v. Ameriquest Mortg. Co.*, No. 05-06-01647-cv, 2007 WL 3317533, at *2 (Tex. App.–Dallas 2007, no pet.)).

11

Here, Plaintiff's arguments regarding Defendant's failure to provide an accounting can be liberally construed as a cause of action for entitlement to an accounting. (*See* doc. 1-1 at 7-8 (arguing that the nature of his lawsuit is violations of the FDCPA and RESPA including "an accounting of the mortgage loan" and that he is likely to succeed on the merits because of Defendant's failure to provide an accounting)). Also, the request in the "Prayer" section of his petition that the Court force Defendant to provide him with an accounting of all charges and amounts due on his loan is a remedy being sought by him. (*See id.* at 10-11.) Accordingly, Plaintiff's allegations implicate both a cause of action and a remedy sought.

### 1. *Lack of Fiduciary Relationship and No Independent Cause of Action*

Defendant cites *T.F.W. Mgmt.* for the proposition that an accounting is warranted among parties who have a fiduciary relationship. (*See* doc. 9 at 6.) It asserts that Texas does not recognize a fiduciary duty owed by a lender to a borrower. (*Id.*) Based on the lack of a fiduciary relationship, it contends that Plaintiff is not entitled to an accounting from Defendant. (*Id.*)

*T.F.W. Mgmt.* states that in order to be entitled to an accounting, a plaintiff "*usually* must have a contractual or fiduciary relationship with the party from which the plaintiff seeks the accounting." 79 S.W.3d at 717 (emphasis added). Therefore, the absence of a fiduciary relationship between the parties does not necessarily mean that a claim for an accounting fails, especially if there is a contractual relationship between the parties. Defendant does not contend that the parties lack a contractual relationship. Accordingly, Defendant's argument fails, and its motion to dismiss Plaintiff's accounting claim and his request for an accounting on the basis that there is no fiduciary relationship between the parties should be denied.

Defendant also argues that an accounting is an equitable remedy and not an independent

cause of action. As noted above, an action for an accounting may be a suit in equity, and such a suit is proper when the facts and accounts are so complex that adequate relief may not be available at law. *See Watson*, 814 F. Supp.2d at 737; *Steele*, 2010 WL 3565415, at *8. Accordingly, Defendant's motion to dismiss Plaintiff's accounting claim on this basis should also be denied.

### 2. *Failure to State A Claim*

Defendant generally argues that all of Plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted. (doc. 9 at 1-2.)[8]

Here, Plaintiff's allegations are insufficient to state a claim for entitlement to an accounting with plausibility. There are no allegations that either the facts or the account at issue are complex, or that he cannot obtain the accounting information he seeks through discovery. *See Brown*, 2011 WL 2200605, at *2. Therefore, he has not set forth any facts that would support a separate claim in equity for an accounting, and any such claim is subject to dismissal.

As for Plaintiff's request for an accounting as a remedy, all of his claims are subject to dismissal, and he is therefore not entitled to relief in the form of an accounting. *See Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 817 (N.D. Tex. 2012) (finding that because the court dismissed all of the plaintiff's causes of action, she was not entitled to relief in the form of an accounting). His accounting claim and request for an accounting should therefore be dismissed.

### F. **Declaratory Judgment**

According to Defendant, Plaintiff's declaratory judgment claim should be dismissed because

---

[8] To the extent that Defendant has not specifically moved to dismiss this claim on this basis, the Court may *sua sponte* dismiss it for failure to state a claim as long as Plaintiff has notice of the Court's intention and an opportunity respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)). The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond. *See Ratcliff v. Coker*, No. 9:08-cv-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

13

he failed to show that an actual controversy exists. (doc. 9 at 7.) It argues that Plaintiff's declaratory judgment claim is duplicative of his other claims, which fail as a matter of law. (*Id.*)

Plaintiff simply requests that the Court determine the rights of the parties under the "written agreements." (doc. 1-1 at 7.) His petition seeks relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code. (*See* doc. 1-5 at 5.) "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action such as this one." *Brock v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)). However, in light of removal from state court, the action may be construed as one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. *See Bell v. Bank of Am. Home Loan Servicing LP*, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (holding that "[w]hen a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act").

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The federal Declaratory Judgment Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted). The Act is an authorization and not a command, and allows federal courts broad, but not unfettered, discretion to grant or refuse

14

declaratory judgment. *Id.*

Plaintiff has alleged no facts giving rise to a plausible substantive claim or suggesting a present genuine controversy between the parties. Defendant's motion to dismiss Plaintiff's request for declaratory judgment should therefore be granted. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *5-6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## G.  Injunctive Relief

Defendant seeks to dismiss Plaintiff's request for injunctive relief for failure to state any underlying claim. (doc. 9 at 7.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). Here, Plaintiff seeks a temporary restraining order, a temporary injunction, and a permanent injunction to prevent Defendant from foreclosing, posting for foreclosure, or undertaking any action to foreclose on the Property. (doc. 1-1 at 7-9.) Because dismissal of all Plaintiff's claims is warranted on the merits, he cannot establish any likelihood of success on the merits. *See Jackson*, 2011 WL 3874860, at *3. Accordingly, Defendant's motion to dismiss Plaintiff's request for injunctive relief should be granted.

### III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, C.J.)(citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Courts may appropriately dismiss an action with prejudice without giving an opportunity to amend, however, when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint.  *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not yet amended his complaint, and he might be able to allege a better case against Defendant.  He should therefore be accorded an opportunity to amend his complaint to allege sufficient facts to state a claim.

### IV.  RECOMMENDATION

If Plaintiff does not file an amended complaint within the 14 days for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's motion to dismiss should be **GRANTED in part and DENIED in part**, and all of Plaintiff's claims against it should be dismissed with prejudice.  If Plaintiff timely files an amended complaint, however, the motion to dismiss should be **DENIED as moot**, and the action should proceed on the amended complaint.

**SO RECOMMENDED** on this 11th day of June, 2015.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE